350 So.2d 652 (1977)
Robert H. BAGGERT
v.
STATE of Louisiana.
No. 59380.
Supreme Court of Louisiana.
September 19, 1977.
*653 Leo J. Berggreen, Baton Rouge, for plaintiff-relator.
William J. Guste, Jr., Atty. Gen., Walter L. Smith, Jr., Barbara Rutledge, Marvin Montgomery, Della Hayes Boyd, Asst. Attys. Gen., for defendant-respondent.
DENNIS, Justice.
This case presents the questions whether a parolee is entitled to confront and cross-examine adverse witnesses at his parole revocation hearing and whether he is entitled to be represented by appointed counsel at such a hearing.
Petitioner Baggert was convicted of simple burglary in 1973, pursuant to his guilty plea, and was sentenced to six years imprisonment. He was paroled in March, 1975. Seventeen months later, on August 26, 1976, he was arrested on charges of simple burglary and attempted theft and incarcerated in a local jail. These charges were dismissed by the district attorney after Baggert waived a preliminary revocation hearing and was returned to the state penitentiary for a final revocation hearing. The evidence introduced against petitioner in the hearing[1] conducted at the penitentiary on October 26, 1976 consisted of a written police report of his August 26, 1976 arrest and a written report of his parole officer. Baggert, unrepresented by counsel,[2] made a statement denying implication in the alleged crimes. At the conclusion of the hearing the parole board revoked Baggert's parole, and he resumed serving the six year sentence. The stated grounds for revocation were that he had violated a condition of his probation which required that he refrain from engaging in any type of criminal conduct.
On November 17, 1976, relator applied to the district court for a writ of habeas corpus, urging that his parole had been revoked improperly, principally because he had not been afforded the assistance of counsel at the revocation hearing. After a hearing, the district judge denied the application finding that relator had been cognizant of the conditions of his parole and of the consequences of violating them. We granted supervisory writs to review the district court's decision.
The United States Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), delineated the federal *654 due process rights of parolees and probationers in revocation proceedings.[3] In Morrissey, the Court observed that parole revocation is not part of a criminal prosecution:
"* * * Parole arises after the end of the criminal prosecution, including imposition of sentence. * * * Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." 408 U.S. at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494.
If an individual violates the conditions of his parole, he is not entitled to a new adversary criminal trial or to the full panoply of rights due a defendant in such a proceeding. Morrissey v. Brewer, supra.
Nevertheless, the liberty of a parolee, although conditional, was recognized as valuable and within the protection of the Fourteenth Amendment. Termination of parole, the Court said, must be accomplished by an orderly process, however informal, structured to insure that the finding of a parole violation is based upon verified facts. Morrissey v. Brewer, supra.
Without establishing the precise procedures to be followed, the Court set forth the minimum requirements of due process. It held that a parolee is entitled to two hearings: a preliminary hearing after his arrest and detention to determine whether there is reasonable ground to believe he has violated the conditions of his parole and a more extensive hearing prior to the final decision on revocation by the Parole Board. At the final revocation hearing due process requires:
"* * * (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499.
The Court did not reach the question in Morrissey whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent. However, one year later, in Gagnon v. Scarpelli, supra, the Court rejected an argument that counsel need never be supplied, finding that "the effectiveness of the rights guaranteed by Morrissey may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess." 411 U.S. at 786, 93 S.Ct. at 1762, 36 L.Ed.2d at 664.
Neither, the Court emphasized, need counsel be supplied in every instance, since there exist "critical differences" between criminal trials and parole revocation hearings which militate against an inflexible requirement of counsel in revocation proceedings. Unlike a criminal trial, in which the prosecutor is committed to convict and intricate procedural rules might snare the untrained layman, the focus of a parole revocation hearing is upon rehabilitation rather than punishment and formal procedures and rules of evidence are not employed. Additionally, it is often the case in revocation hearings that the facts are either not in dispute, as when the parolee has been convicted of committing another crime or has admitted the charges against him, or are susceptible of simple presentation by the parolee himself. In these situations, the introduction of counsel into the hearing would be unbeneficial to the parolee and would unnecessarily encumber the proceeding. Gagnon v. Scarpelli, supra.
*655 However, fundamental fairness requires that counsel be provided for the indigent parolee in cases where he might be expected to encounter difficulty in presenting his version of a disputed set of facts. The decision as to the need for counsel is to be made on a case by case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the responsible agency must be accorded considerable latitude in making its determination, the Court suggested particular circumstances in which it deemed the assistance of counsel essential:
"* * * Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. * * *" (Emphasis supplied). Gagnon v. Scarpelli, 411 U.S. at 790, 93 S.Ct. at 1764, 36 L.Ed.2d at 666.
Under these guidelines, relator, who consistently denied the charge of criminal conduct against him, had a right to appointed counsel upon request,[4] and we find that the Parole Board abused its discretion in failing to so advise him.
Our conclusion that due process required the provision of counsel in this case is strengthened by the manner in which the hearing was conducted. Unfortunate omissions in the record make it unclear whether relator was informed of his right to confront and cross-examine adverse witnesses, see footnote 2, or whether he knowingly and intelligently waived this right. In any event, it is clear that he was deprived of the benefit of the right by the substitution of a police report and parole officer's case narrative for live testimony. That the Board was willing to accept such evidence as proof of relator's parole violation without affording him a meaningful opportunity to confront and refute it, if possible, suggests a disquieting unreceptiveness to any evidence favorable to the parolee. Counsel was needed not only to safeguard relator's procedural rights, but also to insure that his claims were given fair and impartial consideration.
As the State points out, the Supreme Court did not prohibit the use, where appropriate, of affidavits, depositions, and documentary evidence. See, Gagnon v. Scarpelli, 411 U.S. 782, 93 S.Ct. 1760, 36 L.Ed.2d at 662, f. n. 5. However, Morrissey established as a minimum requirement of due process in revocation hearings "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." When the Parole Board has before it allegations of criminal conduct, and it has not been specifically found that confrontation and cross-examination would expose a witness to a significant risk of harm, it is decidedly inappropriate to receive unassailable written reports as the sole evidence of the alleged violation.
Because we conclude that the revocation proceeding in the instant case did not fulfill the minimum requirements of federal due process it is unnecessary for us to consider at this time whether additional strictures have been imposed by our state constitution.
Accordingly, petitioner is entitled to a writ of habeas corpus. The judgment of the district court denying petitioner such relief is reversed and the case is remanded. The district court is further directed to vacate the decision of the Parole Board and allow the State to conduct a revocation hearing in accordance with the views herein expressed.
*656 SANDERS, C. J., concurs with written reasons.
MARCUS, J., concurs.
SANDERS, Chief Justice (concurring).
I do not agree that it was necessary for the Parole Board to appoint counsel for the parolee here. There is no rigid constitutional requirement that counsel be appointed in parole proceedings. The parolee made no request for counsel.
In the interest of justice in the present case, I support the decree setting aside the revocation. The parolee had not been convicted of the crime in a court proceeding. Moreover, he denied it. The evidence offered consisted of written reports, which, of course, were admissible at the parole hearing. In the light of all the circumstances, however, the testimony of witnesses to the crime should have been produced.
Accordingly, I concur in the decree.
NOTES
[1] The record of the hearing was destroyed by fire, but a skeletal account of what transpired therein is included in the stipulation of facts.
[2] Petitioner was advised by the parole board before the hearing that "[a]t your expense, you may have an attorney, witnesses or visitors present with you at your hearing." Contrary to the stipulation of facts, entered into by defense counsel and the State, our review of the record does not reveal that Baggert was informed he had a right to cross-examine adverse witnesses.
[3] Although Morrissey dealt with parole revocation and Scarpelli with probation revocation, the Court perceived no difference between the two relevant to the guarantee of due process. Gagnon v. Scarpelli, supra. Hence, the principles announced in each case are equally applicable to either type of proceeding.
[4] We consider relator's indigency to have been established by the district court's finding that he was entitled to appointed counsel in the related criminal prosecution.